IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA ATTERBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 6653 |
| | ) | |
| COOK COUNTY SHERIFF, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant's motion to dismiss and Defendant's motion for sanctions. For the reasons stated below, we grant the motion to dismiss and deny the motion for sanctions.

## BACKGROUND

Plaintiff Wanda Atterberry (Atterberry) alleges that from December 1995 to August 2006 she was employed by Cook County Department of Corrections (DOC) as a prison guard at the Cook County Jail. Atterberry claims that she filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in June 2006 (First EEOC Charge). Subsequently, Atterberry was allegedly subjected

1

to harassment, and the terms and conditions of her employment were altered in retaliation for the filing of the First EEOC Charge. On June 21, 2006, Atterberry allegedly filed a complaint with the Inspector General's Office of the Cook County Sheriff's Office (IG's Office), complaining about the alleged harassment. Atterberry claims that the harassment then worsened, and that on August 29, 2006, she was suspended for having an unauthorized no-pay status.

Defendant indicates that on August 29, 2006, a written complaint was filed with the Cook County Sheriff's Merit Board (Merit Board) alleging that Atterberry failed to report for duty on April 22, 2006. The complaint also alleged that Atterberry violated certain rules and regulations of the DOC by calling in to take a medical day even though she knew that she had no medical leave time accumulated and was in unauthorized no-pay status. According to Defendant, Atterberry had called in sick on prior occasions twenty times without having sick leave. Atterberry was accorded hearings before the Merit Board on June 7, 2007, and June 22, 2007 (Administrative Proceedings), and on October 25, 2007, the Merit Board issued a written ruling finding that the charges against Atterberry were meritorious and ordering termination of her employment, effective August 28, 2006.

Atterberry also contends in her complaint that on November 8, 2007, she was denied an opportunity to return to work despite the fact that an unrelated prior

arbitration ruling had ordered Defendant to allow Atterberry and others to return to work. On November 26, 2007, Atterberry filed a second EEOC Charge (Second EEOC Charge) alleging further retaliation. On October 21, 2009, Atterberry filed the instant action and includes in her complaint claims alleging race discrimination and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I), and race discrimination in violation of 42 U.S.C. § 1981 (Section 1981) (Count II). Defendant moves to dismiss all claims and moves for sanctions.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I.  Proper Defendant

Defendant Cook County Sheriff (Sheriff) moves to dismiss the instant action. We note that DOC was named as the sole defendant in the complaint. However, the DOC is not a suable entity. *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 307 (7th Cir. 1993). The Sheriff is the proper Defendant in this case and Atterberry has not objected to the Sheriff's substitution as the Defendant in this case. Therefore, we will proceed with ruling on the Sheriff's motion to dismiss.

II.  Doctrine of Res Judicata

Defendant argues that this action is barred under the doctrine of res judicata. In determining whether the doctrine of res judicata applies based on a state court judgment, a federal court should "apply the preclusion law of the state that rendered the judgment. . . ." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Under Illinois law, the doctrine of *res judicata* bars a subsequent action if:

"(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. 2001). Atterberry concedes that there was a final judgment on the merits in the Administrative Proceedings and court review of such proceedings and an identity of the parties. (Ans. Dis. 3). We find that there was a final judgment on the merits in the Administrative Proceedings and court review of such proceedings and that such rulings can be binding for res judicata purposes. *See Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008)(stating that "[a]s a general matter, res judicata applies to administrative hearings if the administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate")(internal quotations omitted)(quoting in part *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966)); *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 634 (7th Cir. 2004)(stating that res judicata applies to rulings made during the Illinois state court review of administrative decisions). Atterberry contends, however, that the doctrine of res judicata is not applicable in this action, arguing that there is not an identity of cause of action.

A. Transactional Test

Illinois courts have developed the transactional test to determine whether there is an identity of cause of action. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998). Under the transactional test, "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id.* (quoting *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 387 N.E.2d 831 (1979))(internal quotations omitted); *see also Baird & Warner, Inc.*, 387 N.E.2d at 838 (stating that "[t]he mere fact that different claims are alleged is immaterial").

1. Sequence of Events

Atterberry's complaint lists a sequence of related events that allegedly led to the termination of her employment. Atterberry contends in her complaint that she was discriminated against, and that she filed an EEOC charge in June 2006. (Compl. Par. 11). Atterberry asserts that, as a result, she suffered retaliation, and that she filed a complaint with the IG's Office on June 21, 2006. (Comp. Par. 13). Atterberry contends that the retaliation continued, and that she was suspended on August 29, 2006. (Compl. Par. 14). Atterberry further alleges that, pursuant to an unrelated prior arbitration decision, Defendant was ordered to allow Atterberry and

6

other employees to return to work. (Compl. Par. 15). Atterberry further alleges that Defendant refused to allow Atterberry to return to work, and engaged in further retaliation and discrimination by discharging her from employment on October 25, 2007. (Compl Par. 19). Atterberry claims that she then filed her Second EEOC charge alleging that she was retaliated against based on her prior protected activity. (Compl. Par. 20). Such allegations fall directly within the scope of facts that are relevant to the assessment of Defendant's reason for terminating Atterberry's employment. Atterberry even summarizes her case by stating that "[i]n the instant matter, [Atterberry] is seeking a determination as to whether she was subjected to *disparate treatment in her termination* when compared to other similarly situated employees and questions whether or not she was subjected to retaliation because of her prior filed complaints with the EEOC." (Ans. Dis. 4)(emphasis added). Thus, the allegations in this case all relate to Atterberry's absences and her ultimate termination, which were the same facts at issue in the Administrative Proceedings and state court review of such proceedings.

2. References to Time Periods Apart from Termination

Atterberry contends that the allegations in the instant action are separate from those addressed in the Administrative Proceedings because Atterberry alleges

7

"discriminatory acts on the part of the Defendant that are other than her termination of employment and those that pre-date the allegations of her discharge for allegations of misuse of her leave time." (Ans. 3). The mere fact that in this case Atterberry references discrimination and retaliation prior to the time of her discharge does not show that her allegations are beyond the operative facts at issue in the Administrative Proceedings. Atterberry indicates in her complaint that there was a gradual progression of conflicts with Defendant that ultimately resulted in her termination, and that the given reason by Defendant relating to her absences was a pretext for discrimination and retaliation. Such facts would have been relevant in the Administrative Proceedings to assess whether Defendant properly discharged Atterberry for misuse of leave time.

Atterberry cites *Pirela v. Village of North Aurora*, 935 F.2d 909 (7th Cir. 1991) to support her contention that her allegations unrelated to her termination render the instant action separate from the Administrative Proceedings. (Ans. 3). In *Pirela*, the Court concluded that a race and national origin claim were in part separate causes of action from an administrative review. 935 F.2d at 913. The Court in *Pirela* found that the claims that touched on the denial of the plaintiff's promotions involved a period prior to the plaintiff's termination, which was the issue addressed at the administrative proceedings and the promotion issues were not

connected to the facts that were "pertinent to [the plaintiff's] discharge action. . . . ." *Id.* The Court concluded that the plaintiff's claims relating to the denial of the promotion were not barred by the doctrine of res judicata. *Id.* Atterberry contends that she has asserted allegations that are also unrelated to her termination. However, Atterberry's own allegations in this case make clear that the prior history of alleged discrimination and retaliation are directly linked to her ultimate termination.

### 3. Facts Relating to Discrimination That Were Not Presented

Allegations concerning racial discrimination, sex discrimination, and retaliation were not presented by Atterberry in the Administrative Proceedings or the state court review of such proceedings. (Ans. Dis. 4). Atterberry could have raised such facts, but never raised them. The doctrine of res judicata bars claims that could have been raised, not only claims that were actually litigated and raised. *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982)(stating that "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"); *Garcia*, 360 F.3d at 639 (stating that "the doctrine of merger and bar . . . precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated"); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir.

9

2000)(stating that the doctrine of *res judicata* bars not only the claims that were "actually decided" in a prior action, but also claims that "'could have been decided in that suit'")(internal quotations omitted)(quoting in part *River Park, Inc.*, 703 N.E.2d at 889). Atterberry could have raised her race discrimination, sex discrimination, and retaliation claims in the state court proceedings. *See, e.g., Garcia*, 360 F.3d at 634, 639 (noting that the plaintiff "could have joined [his] civil-rights claims with his administrative appeal" which included Title VII and Section 1981 claims because state courts have concurrent jurisdiction over such claims); *Durgins v. City of East St. Louis, Illinois*, 272 F.3d 841, 843-84 (7th Cir. 2001)(stating that Illinois law "permits constitutional claims . . . to be joined with administrative-review proceedings and explored in discovery" and res judicata would apply to later actions based on constitutional claims that were not raised during administrative review); *Stykel v. City of Freeport*, 742 N.E.2d 906, 915 (Ill. App. Ct. 2001)(stating that "causes of action for civil rights violations by an administrative agency and other constitutional challenges are not preempted by the Review Law and may be joined with an action for administrative review"). Atterberry admits that she did not even attempt to join her race discrimination, sex discrimination, and retaliation claims during the Administrative Proceedings or during the state court review of such proceedings. *See, e. g., Smith v. Nolan*, 648 F. Supp. 972, 977 (N.D. Ill.

1986)(finding that a review of a decision of the police merit board would be a final decision for res judicata purposes but that the plaintiff could litigate in federal court since plaintiff attempted to raise the federal claims before the merit board and the board declined to address the claims). The same core of operative facts relating to Atterberry's termination that were at issue in the Administrative Proceedings and during the state court review of those proceedings are at issue in the instant action. Thus, there is an identity of cause of action under the transactional test.

We note that Defendant addressed the same evidence test in its motion and Atterberry contends that Defendant cannot satisfy the same evidence test for the purposes of establishing an identity of cause of action. (Ans. Dis. 4). It is true that at one time Illinois courts applied both the transactional test and the same evidence test for res judicata determinations. *See, e.g., Pirela*, 935 F.2d at 912. However, in *River Park, Inc.*, the Illinois Supreme Court specifically adopted the transactional test and rejected the continued use of the same evidence test. 703 N.E.2d at 893. Thus, the same evidence test is not applicable in this case. We also note that even if the same evidence test were applied in this case, Defendant could establish an identity of cause of action under that test as well.

B.  Full and Fair Opportunity to Litigate Claims

Atterberry also indicates that she did not have an opportunity to adequately litigate her race discrimination, sex discrimination, and retaliation claims in state court.  (Ans. Dis. 4).  An exception to the doctrine of res judicata is that the doctrine is not applied "if the plaintiff did not have a full and fair opportunity to litigate h[er] claim in state court." *Hicks v. Midwest Transit, Inc.*, 479 F.3d at 471 (internal quotations omitted)(quoting *Licari v. City of Chicago,* 298 F.3d 664, 667 (7th Cir. 2002)).  A plaintiff is deemed to have been given a full and fair opportunity to litigate claims "so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Id.*

Defendant has shown that Atterberry was afforded more than the minimum procedural due process requirements.  We can, for the purposes of ruling on the instant motion to dismiss, take judicial notice of rulings in the Administrative Proceedings and state court review of such proceedings, which are matters of public record, without converting the instant motion into a motion for summary judgment. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994)(stating that in addition to the allegations in the complaint, "'[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment")(quoting in part *United States v. Wood*, 925 F.2d

1580, 1582 (7th Cir. 1991)). In the Administrative Proceedings, Atterberry was personally served with a copy of the administrative complaint and notice of the hearing before the Merit Board. (D Ex. A 2). Atterberry appeared before the Merit Board to contest the charges in the complaint and both sides presented evidence. (D Ex. A 2). After hearing the evidence, the Merit Board issued a written decision, with explicit findings of fact and conclusions of law. (D. Ex. A 3-4); *see also Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 820 F.2d 892, 896 (7th Cir. 1987)(indicating factors considered to assess the preclusive effect of rulings in an administrative proceeding, such as whether the ruling body "rendered findings of fact and conclusions of law"). The Merit Board found that the charges brought by Defendant were meritorious and ordered the termination of Atterberry's employment. Atterberry appealed the decision to the Illinois Circuit Court, which affirmed the Merit Board's decision. *See Pirela*, 935 F.2d at 915 (stating that "Illinois courts have a duty, under the Administrative Review Act, to ensure that due process and an impartial adjudication were afforded in the administrative hearing")(internal quotations omitted)(quoting in part *Lee v. City of Peoria,* 685 F.2d 196, 201 (7th Cir. 1982)). Atterberry then appealed to the Illinois Appellate Court, which affirmed the Merit Board's decision in an eleven page opinion. (D. Ex. C). Thus, Atterberry was accorded a full and fair opportunity to litigate her race discrimination, sex

discrimination, and retaliation claims during the Administrative Proceedings and the state court review. To keep her dispute with Defendant alive, Atterberry cannot, after having lost in state court, raise claims that she could and should have raised earlier. In this case, judicial economy would not be served if Atterberry was allowed to pursue her race discrimination, sex discrimination, and retaliation claims at this juncture and present the same facts to this court that could and should have been presented in the state court. *Spiller v. Continental Tube Co.*, 447 N.E.2d 834, 838 (Ill. 1983)(explaining that the doctrine of res judicata is supposed to "enhance judicial economy by prohibiting repetitive litigation")(internal quotations omitted).

### C. Other Administrative Ruling

Atterberry also argues that Defendant failed to abide by an unrelated arbitration ruling that required Defendant to allow Atterberry to return to work. However, as Defendant points out, Atterberry already raised that argument with the state appellate court and the appellate court rejected the argument, finding that Defendant was not required under the unrelated arbitration ruling to allow Atterberry to return to work. (D. Ex. C 6-8). Thus, the doctrine of res judicata also applies to Atterberry's arguments pertaining to the unrelated arbitration ruling.

D.  Fairness

Atterberry also argues that the doctrine of res judicata should not be applied in this case because it would be unfair.  The doctrine of res judicata should "not be applied where it would be fundamentally unfair to do so."  *Nowak*, 757 N.E.2d at 477.  In the instant action, Atterberry has not shown that it would be fundamentally unfair to apply the doctrine of res judicata.  Atterberry had every opportunity to pursue her race discrimination, sex discrimination, and retaliation claims in the state court and admits that she did not even attempt to have such claims joined in the state court proceedings.  Thus, it would be unfair to Defendant, after prevailing in the Administrative Proceedings and subsequent state court review and appeals for Atterberry to be allowed to resurrect the same factual dispute in this court.  Fairness therefore supports the application of res judicata in this case.


III.  Sanctions

Defendant moves for sanctions against Atterberry, arguing that Atterberry has pursued frivolous arguments.  Defendant contends that Atterberry disregarded controlling authority and Defendant's counsel informed Atterberry's counsel that Atterberry's arguments lacked any basis in the law.  While we have concluded that Atterberry cannot prevail in this court because her claims in this case are barred by

15

the doctrine of res judicata, Defendant has not provided sufficient justification to show that Atterberry's arguments were frivolous or pursued for an improper purpose. Therefore, we decline to award sanctions and Defendant's motion for sanctions is denied.

## CONCLUSION

Based on the foregoing analysis, we grant Defendant's motion to dismiss and deny Defendant's motion for sanctions.

                                    _____
                                    Samuel Der-Yeghiayan
                                    United States District Court Judge

Dated:   February 23, 2010